IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

PERRY M. BLANKENSHIP,

        Plaintiff,

v.                                    CASE NO. 2:04-cv-00458

JO ANNE BARNHART,
Commissioner of Social Security,

        Defendant.


## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are cross-motions for judgment on the pleadings.

Plaintiff, Perry M. Blankenship (hereinafter referred to as "Claimant"), filed an application for DIB on February 8, 2000, alleging disability as of October 1, 1999, due to anxiety, hypertension, dizziness, severe headaches, blurred vision, stomach problems, fatigue and Persian Gulf Syndrome.  (Tr. at 93-96, 113.)

1

The claim was denied initially and upon reconsideration. (Tr. at 52-56, 60-63.) On August 29, 2000, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 66.) The hearings were held on October 18, 2001, March 4, 2002 and September 11, 2002 before the Honorable John Murdock. (Tr. at 697-741, 742-778, and 779-797.) By decision dated November 20, 2002, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 19-27.) The ALJ's decision became the final decision of the Commissioner on March 12, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 8-10.) On May 12, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently

engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant

satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 20.) Under the second inquiry, the ALJ found that Claimant suffers from a combination of impairments. (Tr. at 22; Finding No. 3, tr. at 26.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 22; Finding No. 4, tr. at 26.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 24.) As a result, Claimant cannot return to his past relevant work. (Tr. at 25.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as cashier II and a bench table worker which exist in significant numbers in the national economy. (Tr. at 25.) On this basis, benefits were denied. (Tr. at 27.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

4

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).
Additionally, the Commissioner, not the court, is charged with
resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d
1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not
abdicate their traditional functions; they cannot escape their duty
to scrutinize the record as a whole to determine whether the
conclusions reached are rational." Oppenheim v. Finch, 495 F.2d
396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the
Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was 32 years old at the time of the administrative
hearing. (Tr. at 93.) He has a high school education. (Tr. at
117.) In the past, he served in the United States Army and worked
as a mechanic, security guard, and truck driver. (Tr. at 114.)

The Medical Record

The court has reviewed all evidence of record, including the
medical evidence of record, and will discuss it further below as
necessary.

Claimant alleges disability as of October 1, 1999 due to
anxiety, hypertension, dizziness, severe headaches, blurred vision,
stomach problems, fatigue and Persian Gulf Syndrome. (Tr. at 113.)
Many of his medical records prior to that time were included in the
case file and provide helpful background in summary form.

Claimant underwent a Compensation and Pension Exam ("C & P Exam") on June 18, 1996.  (Tr. at 433.)  The evaluator, Gregory Cheney, M.D., noted multiple somatic complaints, "most of which seem to relate to an anxiety disorder." (Tr. at 433.)  Claimant's visual testing showed that he had ill-sustained accommodation due to receded NPC, decreased amplitude of accommodation and inability to sustain accommodation for more than a few seconds.  He had no ocular pathology, and his vision was correctable to 20/20.  (Tr. at 436-7.)

In 1997, Claimant underwent evaluations at the Huntington Veterans' Administration Center ("Huntington VA") due to his complaints of unexplained  fatigue, blurred vision, and low back pain.  Claimant reported multiple allergies which were treated with medications and injections.  A lumbar series revealed only mild degenerative changes.  A psychiatric evaluation reported probable anxiety disorder. (These records are included as Exhibit 1F in the record, but are illegible.  The information summarized in this paragraph comes from page 2 of the ALJ's opinion, tr. at 20.)

Claimant underwent an upper GI series on September 10, 1997 which showed no active ulceration or reflux.  A small sliding hiatal hernia was noted, and a scarred duodenal bulb reflected prior disease.  (Tr. at 167.)  Discharge diagnoses on that date included fatigue, allergic rhinitis, mood disorder, and GERD.  The physician recommended consultation with the Persian Gulf Clinic and

6

scheduled an appointment there for Claimant in October. (Tr. at 199.)

During the period of January, 1996 through May, 2000, Claimant treated variously at the emergency room for complaints of epigastric pain; congestion; sore throat and ear pain; dizziness; shortness of breath; abdominal pain; neck, back and shoulder pain; chest pain; fatigue and nausea; blurred vision and pain in both eyes; and headaches.  In each instance, Claimant was discharged after only a short stay and treatment with medication.  (Tr. at 238-370). It does not appear that he was receiving any consistent or ongoing treatment for any of these complaints.

A C & P Exam dated May 18, 1998 diagnosed depressive disorder, NOS; personality disorder, NOS; gastroesophageal reflux disease, fatigue of unknown etiology, asthma, and allergic rhinitis. (Tr. at 545-6.)

On April 29, 1999, Claimant underwent a C & P Exam at the VA. (Tr. at 685-7.)  He was diagnosed with anxiety disorder at that time.  The examiner noted that Claimant "demonstrates symptoms commensurate with generalized  anxiety disorder with intermittent peripheral numbness and tingling, dysfunctional thought process, confusion, inability to cope, inability to function appropriately in given situations.  This is transient.  It is not a true panic disorder where he becomes totally dysfunctional, but is more commensurate with a general anxiety disorder history."  (Tr. at

7

686.)

On May 17, 1999, Claimant underwent another C & P Exam at the VA.  He complained of shortness of breath, anxiety, cold chills, mood swings, restlessness, depression, insomnia and irritability. (Tr. at 516.) Examiners diagnosed mood disorder, NOS, with atypical features; personality disorder, NOS; reflux; asthma; allergic rhinitis; and unexplained fatigue. (Tr. at 517.)  The report indicates that Claimant was well groomed, cooperative and pleasant, was coherent and relevant in speech, exhibited goal-directed thoughts and appropriate affect, and showed no evidence of hallucinations or delusions.  His cognitive functions were grossly preserved.  (Tr. at 517.)

A Psychiatric Review Technique form was completed by James Binder, M.D. on March 17, 2000.  (Tr. at 214-30.)  Dr. Binder indicated that Claimant suffered from personality disorders (12.08) and substance addiction disorders (12.09), but that these impairments were not severe.  (Tr. at 214.)  He noted that Claimant's daily activities included watching television, cutting the grass, paying bills, shopping for food once a month, attending church 9 - 12 hours per week, and visiting relatives 4 times a week for 4-hour periods.  Claimant reported that he had trouble getting things done. (Tr. at 215.)  Dr. Binder concluded that Claimant had slight limitations in his activities of daily living, slight difficulties in maintaining social functioning, and seldom

8

had difficulties of concentration, persistence and pace resulting in failure to complete tasks in a timely manner. (Tr. at 221.) He noted that Claimant never had episodes of deterioration or decompensation in work settings.

A state agency medical source completed a Physical Residual Functional Capacity Assessment form on March 17, 2000. (Tr. at 223-30.) The examiner found no limitations. He opined that while the symptoms were attributable to a medically determinable impairment, the severity or duration of the symptoms were disproportionate to that which would be expected. (Tr. at 228.)

Claimant underwent a general physical ordered by the West Virginia Department of Health and Human Resources on April 25, 2000. (Tr. at 374-5.) Claimant's vision was corrected to 20/25. The examiner, Dr. Bellam, diagnosed anxiety and indicated that Claimant was not able to perform full-time work in his customary capacity or any other capacity. He recommended sedentary work for a duration of six months and a psychological consultation. (Tr. at 375.)

Records from Community Health Foundation from April 25, 2000 through July 25, 2000 indicate that Claimant sought treatment for increased back pain, blurred vision, blueness in the groin area of his legs, fatigue, and headaches. (Tr. at 379-83.) He was treated with medications, was counseled about hygiene, and was told to rest.

Licensed psychologist Sunny S. Bell performed a psychological

9

evaluation upon Claimant on May 11, 2000. (Tr. at 231-5.) Claimant was not taking any medication at that time. (Tr. at 231.) Upon testing, Claimant exhibited a verbal IQ score of 101, a performance IQ of 97, and a full scale IQ of 99, commensurate with an average range of intellectual abilities. (Tr. at 234.) Testing also revealed that Claimant functioned at high school levels in reading and arithmetic, and a seventh grade level in spelling. (Tr. at 234.) On mental status examination, Claimant interacted appropriately, had relevant and coherent verbalizations, a sense of humor, good eye contact, appropriate thought content, adequate insight and good judgment. He was alert, cooperative, motivated, and showed no gross psychomotor difficulties. (Tr. at 233.) Psychologist Bell diagnosed Claimant with depressive disorder, NOS, with anxious features; chronic fatigue, gastric reflux, hiatal hernia, ulcers, muscle and joint pain, double and blurred vision (by self report). She commented, "It appears he is having problems with depression and anxiety. Psychiatric treatment is recommended." (Tr. at 234.)

A state agency medical source completed a Psychiatric Review Technique form on August 2, 2000. (Tr. at 386-94.) The examiner concluded that Claimant had affective disorders (12.04) and anxiety related disorders (12.06), but that these were not severe impairments. (Tr. at 386.) He noted that Claimant had a diagnosis of non-specific depression with anxious features, but no

generalized persistent anxiety, fear, or recurrent panic attacks, obsession, compulsions, or recollections.   (Tr. at 387, 389-90.) He found that Claimant was slightly limited in his activities of daily living, had slight difficulties in maintaining social functioning, and seldom had deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.   He noted that Claimant never had episodes of decompensation or deterioration in work or work-like settings. (Tr. at 393.)

A second state agency medical source completed a Physical Functional Capacity Assessment form on an unknown date.   (Tr. at 395-402, undated.)  This evaluator found no exertional limitations and no non-exertional limitations. (Tr. at 396-402.)

Claimant's vision was evaluated on June 8, 2000. (Tr. at 658.) He complained of having headaches and becoming dizzy when he wore his glasses, and stated that letters sometimes appeared fuzzy.  He also reported having double vision at times.   The examiner diagnosed intermittent diplopia with no definite etiology and advised Claimant to return in 18 months or immediately if diplopia returned.   (Tr. at 658-9.)

Claimant's atypical chest pain was evaluated on an outpatient basis at Logan General Hospital in December, 2000. (Tr. at 568.) Claimant's stress test was negative, a cardiolite myocardial perfusion spect scan was negative for myocardial ischemia, his

echocardiogram was normal, and he did not have any clinical evidence of heart disease.  The examiner stated that Claimant did not need any treatment for his heart.  (Tr. at 568, 571, 574.)

On May 6, 2001, Claimant reported to Logan General Hospital with severe chest pain radiating into his arm and causing vomiting. (Tr. at 582.) Claimant was transferred to Charleston Area Medical Center, where he was diagnosed with acute inferior myocardial infarction, hyperlipidemia, and abnormal liver function.  (TR. at 581.) On May 7, 2001, he underwent a left heart catheterization, coronary angiogram, and left ventriculogram.   These led to diagnoses of minimal coronary disease, fair left ventricular function with hypokinesis involving inferior wall.  (Tr. at 581, 586.)   Claimant was discharged on May 11, 2001 on various medications with instructions to follow up with designated physicians.  (Tr. at 581.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ incorrectly determined that the Claimant did not have a severe mental impairment; (2) the ALJ failed to consider all of the evidence and failed to properly weigh the evidence, hence, his decision was not supported by substantial evidence; (3) the ALJ failed to properly weigh Claimant's credibility.   (Pl.'s Br. at 7-14.)   The Commissioner responds that the decision as to Claimant's mental

impairment was supported by substantial evidence, that the ALJ properly weighed the evidence, and that he correctly assessed Claimant's credibility. (Def.'s Br. at 8-20.)

I.   Mental Impairments

Claimant alleges that he had a severe mental impairment, anxiety, which gave rise to functionally limiting physical complaints. (Pl.'s Br. at 10-11.) According to statute, "[a]n impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities." 20 C.F.R. § 404.1521(a) and 416.921(a)(2002).

The ALJ considered several pieces of evidence in determining Claimant's mental status. First, he considered a psychiatric evaluation showing Claimant's "probable anxiety disorder", (tr. at 20, citing tr. at 1F)[1]. The ALJ also reviewed Claimant's 1999 evaluation showing "mood disorder, NOS, with atypical features, personality disorder, NOS; gastroesophageal reflux disease; asthma; allergic rhinitis; and fatigue of unknown etiology." (Tr. at 21 citing tr. at 514-17.) The evaluation by Ms. Bell of May 11, 2000 observed that Claimant had problems with depression and anxiety, and that psychiatric treatment was recommended. (Tr. at 21, citing tr. at 234.)

---

[1] These records concern the period of time before the alleged disability. Unfortunately, the copies before the court are illegible; however, the ALJ obviously read them and gleaned the above information from them.

Claimant alleges error in the ALJ's interpretation of Ms. Bell's note "recommending" psychiatric treatment: he argues that she felt treatment was necessary. (Pl.'s Br. at 10.) Claimant also argues that he told Ms. Bell that a VA doctor had told him he had anxiety, but that the drive to receive treatment was too long, and that was the reason he did not pursue treatment.

Even giving Claimant the benefit of these arguments, however, does not result in a finding of severe mental impairments. The record is devoid of any evidence that Claimant was functionally limited by these conditions (or physical complaints arising therefrom)during the relevant time period. The record further lacks any medical opinions that these conditions restricted Claimant from working, and any evidence that he ever sought mental health treatment or took regular psychiatric medications during this time. The ALJ noted that Claimant may be in the early stages of Gulf War Syndrome; however, he correctly found that Claimant failed to prove any vocational impact from such condition. (Tr. at 22.)

Even in his Brief, Claimant fails to demonstrate that his mental impairments would affect his ability to work from either a physical or mental standpoint. Claimant refers to the May 21, 1999 findings of Stephen Shy, D.O. of the VA, who noted his generalized anxiety disorder symptoms. The court notes first that Dr. Shy's findings pre-dated the alleged disability onset date of October 1,

14

1999.  Furthermore, the same report by Dr. Shy states that "[Claimant's anxiety] is transient.  It is not a true panic disorder where he becomes totally dysfunctional but is more commensurate with a generalized anxiety disorder."  Notably, Dr. Shy opined on that same visit that Claimant had a normal physical exam.  (Tr. at 687.)  Thus, Dr. Shy did not link Claimant's mental condition to any functionally limiting physical condition.  Nor did he restrict Claimant from working or engaging in other physical activity.

Nonetheless, Claimant argues that the ALJ should have considered whether his mental condition could have caused his various physical complaints. (Pl.'s Br. at 11.)  He then suggests that the ALJ applied the wrong definition of "severe" when considering his complaints.

Claimant is in error.  It is Claimant's burden to establish the physical or mental condition(s) he alleges and to prove the functional impact of either.  It is not the ALJ's duty to bridge a gap in the evidence by *supposing* or *inferring* that a mental condition *might* give rise to physical complaints—that is part of the Claimant's burden of medical proof.

When evaluating a claimant's mental impairments, the Social Security Administration uses a special sequential analysis outlined at 20 C.F.R. §§ 404.1520a and 416.920a.  First, symptoms, signs, and laboratory findings are evaluated to determine whether a

15

claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1)(2002). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his/her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e)(2002). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2)(2002). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3)(2002). The first three areas are rated on a five-point scale: None, mild, moderate, marked, and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2002). A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1)(2002). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2)(2002). Fifth, if a mental impairment is "severe" but does not meet the criteria in the

16

Listings, the ALJ will assess the claimant's residual functional capacity.   §§  404.1520a(d)(3)  and  416.920a(d)(3)(2002).   The regulations further provide:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).   The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2)(2002).

Here, while the ALJ did not articulate each of these steps, his analysis was adequate.   The ALJ recited the scant medical evidence and noted that only a diagnosis of "probable anxiety disorder" had been rendered during the relevant time frame--hardly proof of the symptoms, signs, and laboratory findings necessary to establish a medically determinable mental impairment.  Next, while there was a possibility that Claimant was in early stages of Gulf War syndrome, there was no evidence that Claimant was even minimally functionally impaired by this or any other mental condition.   As the ALJ stated, Claimant had never alleged or reported any functional limitations due to anxiety or depression, and had not sought or been referred for any treatment for depression, or even medication.  (Tr. at 22.) Hence, Claimant would fail steps 1, 2 and 3 of the analysis.

Moreover, as the ALJ noted, state agency medical sources who reviewed Claimant's records determined that Claimant had no

17

exertional limitations resulting from any physical impairment; that his anxiety resulted in only slight restrictions in activities of daily living; slight restrictions in social functioning; that he seldom had deficiencies in concentration, persistence or pace; and that he never had episodes of deterioration or decompensation in work or work like settings. They opined that he had <u>no impairment that would prevent him from working</u>.(Tr. at 22 <u>citing</u> Exhibits 3B[2], 2F, 3F, 9f and 10f; tr. at 214-25; 223-30; 386-94; 395-402.)

Because the Claimant has failed to show that his mental conditions have any functional impact on his ability to work, either by way of mental limitation or by giving rise to physical functional limitations, the court proposes that the presiding District Judge find that the ALJ's decision regarding mental impairments was supported by substantial evidence.

    II.  <u>Weighing the Evidence</u>

    Contrary to Claimant's argument, the ALJ did not regard Claimant's physical complaints as "baseless" due to his lack of severe mental impairment.  He discussed Claimant's history of treatment at the Huntington VA, the medical records from Appalachian Regional Healthcare, inpatient records from CAMC, records of James N. Frame, M.D. and Bassam Moushmoush, M.D., as well as the findings of state agency physicians. (Tr. at 20-22.)

_____

    [2] The court believes the reference to "3B" is a typographical error, as it does not pertain to state agency medical source reports.

18

None of these suggested that Claimant's complaints were baseless; nor did the ALJ treat them as such: he found in Claimant's favor at step 2 of the social security analysis with respect to his physical complaints. Rather, as discussed below, the records indicated that Claimant was not functionally limited to the degree he alleged.

Claimant argues again in this section that the ALJ incorrectly interpreted the note of Ms. Bell, and that she did deem psychiatric treatment necessary. (Pl.'s Br. at 13.) Semantics aside, the end result is the same: Claimant did not pursue mental health treatment and still has not demonstrated by substantial evidence a need for same. Claimant argues that distance prevented him from seeking treatment; however, the court notes that he was able to travel to the emergency room for physical complaints quite often during the 1996 through 2000 time frame. On only three of those occasions, he complained of anxiety-related symptoms and received medication. (Tr. at 260, 301, 313.)

Claimant next argues that state agency medical sources lacked a full record of his mental conditions, and rendered opinions based on insufficient evidence. (Pl.'s Br. at 13.) However, while the first source had only records prior to March 2000, the second source had obviously reviewed Ms. Bell's evaluation; he cited to both it and its specific results. (Tr. at 387.) Both evaluators opined, given the record as developed at the time of their respective reviews, that Claimant did not have a severe mental

impairment.  Claimant points to no additional evidence which might have altered their decisions.

Claimant argues that the ALJ erred in his evaluation of his visual complaints. (Pl.'s Br. at 13.) He argues, without support, that his NPC (near point convergence) is the cause of his subjective vision complaints.  The record shows, however, that Claimant's vision problem was first identified in 1996, (tr. at 435), at which time he was working as a commercial truck driver. Claimant continued employment as a truck driver through October 1999. (Tr. at 99, 114, 690.) Further, Claimant's medical records show that he only suffered from double vision "at certain times." (Tr. at 658.)  While the examiner advised Claimant to return if his double vision recurred, there are no records of any follow-up visits. (Tr. at 659.)

Claimant then argues that the ALJ should have afforded more weight to his VA disability pension award. (Pl.'s Br. at 14.) However, the records show that the standard applied for disability is one of "resolving all doubts in favor of the veteran"; (tr. at 683), while the substantial evidence standard governs this case. Yet even under that generous VA standard, the examiner freely opined that none of Claimant's disabilities were totally disabling and that none of them were of a severe nature.  (Tr. at 683-4.) The examiner noted a likelihood of improvement and stated that the evaluation was not considered permanent. A future examination was

scheduled to determine whether improvement had occurred.  (Tr. at 683-4.)

The regulations provide that the Commissioner is not bound by other agency determinations, which apply differing standards, but must make a determination based on social security law.  20 C.F.R. § 404.1504, 404.1527(e)(2002).  As such, the VA's opinion in this instance is not entitled to significant weight.

The court proposes that the presiding District Judge find that the ALJ properly weighed and considered the evidence in rendering his opinion below.

### III. Credibility

Claimant fleetingly argues in the conclusion portion of his Brief that the ALJ failed to assess his credibility properly.  He makes only broad statements and offers no evidentiary support.  It is difficult for the court to address an alleged error when it is so ill-defined.

Generally, however, the issue of credibility is determined by the factors set forth in 20 C.F.R. §404.1529 (2002) and SSR 96-7p.  Consistent with these, the ALJ specifically considered Claimant's symptoms, including subjective complaints of pain, and the extent to which his symptoms could reasonably be accepted as consistent with his medical records.

SSR 96-7p directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and

about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record.  This includes, but is not limited to:

- The medical signs and laboratory findings;

- Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

- Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

Here, the ALJ noted Claimant's subjective complaints, but found that they were not supported by the medical evidence. (Tr. at 23.)  While Claimant had conditions which could reasonably be expected to cause some of the pain and limitations he alleged, the ALJ noted that there was no evidence to support his allegations of a complete inability to work. (Tr. at 23; discussion of medical evidence at 20-22 and 24.) Claimant suffered only mild degenerative changes in his back, and his allergies were controlled. (Tr. at 24.)  While he was diagnosed with "probable anxiety disorder" upon Gulf screening, the examiner did not refer him for counseling or

22

prescribe any medication.  (Tr. at 24, Exhibit 1F, unreadable.)

Following Claimant's myocardial infarction, his physical exams have been normal. His EKG showed no changes suggestive of myocardial ischemia, and only a mild reduction in functional capacity. (Tr. at 24, 568, 571.)  The ALJ further noted that despite Claimant's complaints that he has constant pain in his eyes which produces headaches and dizziness, he is still able to pay bills, read 30 minutes each day, and watch television 11 hours each day. He further reported attending church activities 9 to 12 hours per week.  Despite his complaints of arm and leg numbness and strength loss, he was still able to grocery shop and mow the grass. (Tr. at 24, 215, 132.)  Finally, no treating, examining, or non-examining physician reported any work-related limitations. (Tr. at 24.)  Hence, the Claimant lacked objective medical evidence necessary to establish his functional limitations.  Due to this discrepancy between Claimant's allegations and the medical evidence, the ALJ properly determined that he was only "somewhat credible." (Tr. at 23.)

The court proposes that the presiding District Judge find that the ALJ's assessment of Claimant's credibility was supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion

for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall

constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

<u>    June 16, 2005    </u>
       Date

<u>Mary E. Stanley</u>
Mary E. Stanley
United States Magistrate Judge